IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| 168TH AND DODGE and RED DEVELOPMENT OF WEST DODGE, | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) ) |
| RAVE REVIEWS CINEMAS, | ) ) ) |
| Defendant. | ) ) |

8:03CV171

MEMORANDUM AND ORDER

Before the court is defendant's motion for summary judgment (Filing No. 341). Plaintiffs filed an amended complaint in this case alleging in claim one that the defendant both expressly and impliedly breached a contract with the plaintiffs and in claim two alleging promissory estoppel. Filing No. 15. Plaintiffs have requested damages for increased interest for their loan rate, for an additional purchase of land, and for moving the location of a gas pipeline, in addition to other less costly damages. The court[1] granted a motion to dismiss the breach of express contract claims. Filing No. 26. Although the parties have turned this case into a convoluted mess[2], the facts and legal issues are fairly straightforward.

**Standard of Review**

On a motion for summary judgment, the question before the court is whether the record, when viewed in the light most favorable to the nonmoving party, shows that there

---

[1] Judge Thomas M. Shanahan was assigned to this case when it was filed and decided the motion to dismiss. Since that time, this case has been reassigned to this court.

[2] Although the case is less than three years old, the parties have filed in excess of 400 pleadings to date. Among counsel there is apparently no such thing as an uncontested matter for even the most routine of issues, which held true during the attempt to file a workable pretrial conference order.

is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Mansker v. TMG Life Ins. Co.*, 54 F.3d 1322, 1326 (8th Cir. 1995). Where unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate. *Id.*

The burden of establishing the nonexistence of any genuine issue of material fact is on the moving party. Fed. R. Civ. P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Therefore, if defendant does not meet its initial burden with respect to an issue, summary judgment must be denied notwithstanding the absence of opposing affidavits or other evidence. *Adickes*, 398 U.S. at 159-60; *Cambee's Furniture, Inc. v. Doughboy Recreational Inc.*, 825 F.2d 167, 173 (8th Cir. 1987).

Once defendant meets its initial burden of showing there is no genuine issue of material fact, plaintiff may not rest upon the allegations of his or her pleadings but rather must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. *See* Fed. R. Civ. P. 56(e); *Chism v. W.R. Grace & Co.*, 158 F.3d 988, 990 (8th Cir. 1998). The party opposing the motion must do more than simply show that there is some metaphysical doubt as to the material facts; he or she must show "there is sufficient evidence to support a jury verdict" in his or her favor. *Id.* Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Facts are viewed in the light most favorable to the non-moving party, "but in order to defeat a motion for summary judgement, the non-movant party cannot simply create a factual dispute; rather, there must

be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." *Carter v. St. Louis University,* 167 F.3d 398, 401 (8th Cir. 1999); *Ghane v. West,* 148 F.3d 979, 981 (8th Cir. 1998). In ruling on a motion for summary judgment, a court must not weigh evidence or make credibility determinations. *Kenney v. Swift Transp. Co.*, 347 F.3d 1041, 1044 (8th Cir. 2003).

**Facts**

The plaintiffs, a limited partnership, are a commercial property development company with its principal place of business in Nebraska, and defendant is a limited liability corporation with its principal place of business in Texas. Defendant owns and operates a chain of movie theaters. Plaintiffs were the developers of the outdoor shopping center known as Village Pointe, located near 168th and Dodge Streets, Omaha, Nebraska. The parties had previously worked together and constructed and leased a theater project in Fort Wayne, Indiana. Plaintiffs received approval from the Omaha City Planning Department for this property, but at the early stages no theater had been included in the plan.

In April 2002, defendant contacted plaintiffs about a proposal to build a theater complex on the property, and later that month the President and Chief Executive Officer, Tom Stephenson, and the Chief Operation Officer, Bob Painter, traveled to Omaha to look at the land. From approximately March through June, it appears that the parties exchanged plans and discussions occurred. Thereafter, very little communication occurred from July through September. Sometime in October the parties began negotiating changes to a letter of intent that had been sent to defendant by plaintiffs back in June. The parties signed a letter of intent on November 21, 2002. Ex. I. Defendant contends that it told plaintiffs throughout the negotiations that board approval was a requirement before it would

3

enter into a lease agreement. Filing No. 343, Ex. L, November 26, 2002, Correspondence from Rave Reviews to plaintiffs; Ex. M, Elizabeth Granville-Smith Depo. 125:18-21; Ex. D, Rehorn Depo. 245:1-6; Ex. F, Ebert Depo. 61:17-21; Ex. K, Ebert Depo. 161:19-162:9; Filing No. 343, March 19, 2003 (letter from plaintiffs to defendant where Scott Rehorn was still talking about "getting this deal approved" so the parties "can continue" to pursue this deal and stating that "hopefully numbers [regarding Council Bluffs demographics] will help you calculate the economics of this deal"); Filing No. 357, Ex. 17, February 12, 2003 (still talking about board approval).

Plaintiffs sent a site plan and proposal which included a theater complex, and plaintiffs entered into a purchase agreement for an additional 14.67 acres to accommodate the theater, pending zoning and plat approval. Defendant contends that as of September 18, 2002, plaintiffs had already become obligated to purchase the 14.67 acres and to finance the cost of moving the natural gas pipeline. Ex. C, Brown Depo. 124:13-17, 127:21-128:6, 129:25-131:12. Plaintiffs disagree and say it did not enter into a contract for moving the gas line until January 2003.

In December the planning board approved the re-zoning plan. Plaintiffs purchased the additional land and eventually effectuated the moving of a gas pipe. By mid-January the deal had not been consummated with a written lease. Plaintiffs pushed defendant to close the deal. When defendant asked about the urgency of signing the lease, plaintiffs then indicated that its financing package depended on obtaining a signed lease with defendant. The parties continued negotiations in February and March. During this time plaintiffs began talking with Douglas Theaters.

Around March 22, 2003, according to plaintiffs, defendant informed plaintiffs that it did not intend to build and lease a theater at Village Pointe. Defendant contends, however, that plaintiffs had resumed negotiations with Douglas Theaters, and plaintiffs, not defendant, decided to discontinue negotiations with defendant. Plaintiffs further contend that in March 2003, it was informed that the board had turned down the agreement. Defendant claims it did not ever make such a representation and that the board did not turn down this venture. Plaintiffs now contend that the board never received the proposal. In August 2003, plaintiffs entered into a contract with Douglas Theaters for the construction of the theater.

Defendant makes three arguments in its motion for summary judgment. First, defendant contends that the statute of frauds applies to plaintiffs' arguments. Second, argues defendant, the letter of intent expressly requires an executed lease which never occurred. Third, defendant contends that plaintiffs, not defendant, terminated negotiations and signed an agreement with Douglas Theaters instead. Defendant contends that the letter of intent plus the actions of the parties cannot result in an implied 20-year lease.

**Discussion - Implied Contract**

The parties entered into a letter of intent on November 13, 2002. The first paragraph stated:

> The purpose of this letter is to express the intent of Lessor to earnestly investigate and work in good faith toward an agreement whereby the Lessor would lease to Lessee the property described herein upon the terms detailed below. Although this letter is binding on the parties as to terms herein detailed, should the transaction contemplated occur, **this shall not be construed as either a lease agreement or an option to lease. Until a definitive agreement (the "Lease") is executed, this shall serve only to detail the terms and conditions which would control these parties in a subsequent agreement should one be executed.** If the following terms

and conditions are acceptable to Lessee, please sign below indicating your agreement to the same. As soon as this Letter of Intent is fully executed by both parties, we will proceed to draw up the Lease in accordance with the Letter of Intent.

Filing No. 15 at Ex. A (emphasis added).

The plaintiffs allege that the parties entered into a "series of express and/or implied contracts" for the movie theater complex. Filing No. 15, at 3. Judge Shanahan previously found the letter of intent to be conditional and indefinite when concluding that the letter did not constitute an express contract. Filing No. 26, pp. 6-7. An implied contract refers to the type of contract which "arises from mutual agreement and intent to promise, when the agreement and promise have simply not been expressed in words. An implied contract arises where the intention of the parties is not expressed but where the circumstances are such as to show a mutual intent to contract." *Turner v. Fehrs Neb. Tractor & Equip. Co.*, 609 N.W.2d 652, 659 (Neb. 2000). Evidence of mutual intent must exist for there to be an implied contract. *Id.; see also Bloomfield v. Neb. State Bank*, 465 N.W.2d 144, 148 (1991). "Such intent is to be gathered from objective manifestations – the conduct of the parties, language used, or acts done by them, or other pertinent circumstances surrounding the transaction." *Kaiser v. Millard Lumber, Inc.*, 587 N.W.2d 875, 882 (Neb. 1999). The Nebraska Supreme Court has stated that:

> An implied contract is an "obligation which arises from mutual agreement and intent to promise, when the agreement and promise have simply not been expressed in words. An implied contract arises where the intention of the parties is not expressed but where the circumstances are such as to show a mutual intent to contract."*Turner v. Fehrs Neb. Tractor & Equip. Co.*, 259 Neb. 313, 609 N.W.2d 652, 659 (2000) (citing *Kaiser v. Millard Lumber*, 255 Neb. 943, 587 N.W.2d 875, 882 (1999)).

6

*Stark v. Soteria Imaging Services, Inc.*, 276 F. Supp. 2d 989, 995 (D. Neb. 2003). The Nebraska Supreme Court has held that a letter of intent fails as a matter of law where there is not shown an objective intent to be bound. *Viking Broadcasting Corp. v. Snell Publishing Co., Inc.*, 497 N.W.2d 383, 386 (Neb. 1993) (parties entered into a letter of intent to merge companies, and Supreme Court found no objective intent that the parties were to be bound by the letter of intent).

With regard to plaintiffs' argument that this is an implied contract, defendant disagrees and argues that the Nebraska Statute of Frauds is applicable, because there is no final writing between the parties. Under Nebraska law, a contract for a lease (of land) must be in writing and signed by the party by whom the lease or sale is made. Neb. Rev. Stat. § 36-105. The Nebraska Supreme Court has clearly held that when the parties agree that the contract must "be reduced to writing and signed by the parties before it took effect", then, "the agreement will not be binding until it is duly signed." *Irish v. Pulliam*, 48 N.W. 963 (Neb. 1891). *See also, Alward v. United Mineral Products Co.*, 250 N.W.2d 623, 625 (Neb. 1977).

The court agrees with the defendant that reducing the final agreement to writing was an essential term of the bargain. The court is troubled by plaintiffs' theory, as such analysis would render the writing requirement a nullity. The parties do not allege that there is a final signed lease agreement, as required by the letter of intent. There is not one. The parties were negotiating rent and other terms as late as March 2003. Further, as early as October 29, 2002, defendant provided plaintiffs with a written revised proposal. The letter contained a statement reminding plaintiffs that the final step in the approval process was approval by defendant's board. Filing No. 357, Ex. 6, Painter Ex. 16. Again, in a

November 26, 2002, letter, defendant's COO, Bob Painter, indicated that it intended to get the deal before its board by the end of 2002 or early 2003. Throughout the record there are numerous mentions from October through March that defendant needs board approval. The letter of intent unambiguously contemplated and required a final written lease agreement.

The court also agrees with defendant that negotiations were continuing and the parties were still talking about alternative rent structures as late as March, 2003, and finds that plaintiffs' implied breach of contract claim fails as a matter of law. The letter of intent is not a lease. In fact, the undisputed evidence shows at least five versions of the proposed lease passing between the parties over a five-month period of time. The court believes, however, that this is just evidence of continued negotiations. *See, e.g., Phoenix Mt. Life Ins. Co. v. Shady Grove Plaza LP*, 734 F. Supp. 1181, 1189 (D. Md. 1990) (negotiations and conduct after letter of intent cannot be basis for implied contract). To find an implied contract in this case would completely vitiate the requirement that the parties comply with the statute of frauds. The letter of intent consisted of about five pages. Obviously, knowledgeable commercial contractors would know that a mult-million dollar agreement needed to be formalized into a written document as contemplated by the letter of intent, and the number of drafts that passed between the parties is indicative that the parties intended to put this agreement into a comprehensive writing that set forth the final terms for the parties. Accordingly, the court grants summary judgment against the plaintiffs on the claim for breach of implied contract.

**Discussion - Promissory Estoppel**

Plaintiffs argue that it relied to their detriment on promises made by the defendant that it would build a theater at the site in question. Plaintiffs contend that it had previous dealings with the defendant, that it spent time and money preparing the construction site for the defendant with defendant's full knowledge, and that defendant assured plaintiffs throughout that it intended to enter into a contract. Defendant contends that this claim fails because (1) it is barred by the statute of frauds; and (2) there is no promise upon which plaintiffs could rely.

Defendant argues that no promise exists from which plaintiffs can base its argument for promissory estoppel. Therefore, the claim should fail as a matter of law. *American Shizuki Corp. v. Int'l Bus. Machines Corp.*, 251 F.3d 1206, 1208 (8th Cir. 2001) (Eighth Circuit applied Nebraska law and determined that the existence of a promise may be considered by the court as a matter of law). Plaintiffs argue that the statute of frauds is inapplicable to their promissory estoppel claim. Plaintiffs contend that they are not asking the court to enforce the lease to find promissory estoppel on the basis of the oral lease. On the contrary, they contend that the promissory estoppel claim is based on defendant's promises to build a theater at the site and/or to sign a lease. Filing No. 356, at 27. Plaintiffs contend that defendant promised to build, sign a lease for, guarantee, and operate a movie theater. Plaintiffs argue that it had a financing package worth $69,000,000 that could only close if defendant and plaintiffs signed the lease. However, it appears from the evidence that defendant might not have been aware of this fact until February, 2003. Filing No. 357, Ex. 19. Plaintiffs argue that it does not seek to enforce the lease. Rather, it seeks to enforce defendant's promise to sign the lease.

This is a twenty year lease negotiation where the goal of the parties is to effectuate a final lease. Although it is hard for the court to discern, it appears that the promise relied upon by the plaintiffs is the "done deal" statement made by CEO Tom Stephenson in January, 2003. Plaintiffs contend that at some point, around January, 2003, Scott Rehorn went to Texas to talk with defendant about the contract. Rehorn represents that he met with CEO Stephenson, COO Painter and CFO Nelson, who assured him that the lease was a "done deal" and board approval a formality. Defendant disputes these statements, and plaintiffs agree that when Rehorn made the "done deal" comment, Rehorn was not paying any attention and had moved on to the next item of business. Rehorn did not even know that the board had not responded yet to the lease. Rehorn Depo. 274:1-16.

The Nebraska Supreme Court has very recently stated:

> Recovery on a theory of promissory estoppel is based upon the principle that injustice can be avoided only by enforcement of a promise. *Folgers Architects v. Kerns*, 262 Neb. 530, 633 N.W.2d 114 (2001). Under the doctrine of promissory estoppel, a promise which the promisor should reasonably expect to induce action or forbearance is binding if injustice can be avoided only by enforcement of the promise. *Merrick v. Thomas*, 246 Neb. 658, 522 N.W.2d 402 (1994). Under Nebraska law, the doctrine of promissory estoppel does not require that the promise giving rise to the cause of action must meet the requirements of an offer that would ripen into a contract if accepted by the promisee. *See, id.; Hawkins Constr. Co. v. Reiman Corp.*, 245 Neb. 131, 511 N.W.2d 113 (1994); *Whorley v. First Westside Bank*, 240 Neb. 975, 485 N.W.2d 578 (1992). Simply stated, there is no requirement of "definiteness" in an action based upon promissory estoppel. *Hawkins Constr. Co., supra*; *Whorley, supra*; *Rosnick v. Dinsmore*, 235 Neb. 738, 457 N.W.2d 793 (1990). Instead of requiring reasonable definiteness, promissory estoppel requires only that reliance be reasonable and foreseeable. *See id.*

*Blinn v. Beatrice Community Hospital and Health Care Center, Inc.*, 2006 WL 42391 *10, 270 Neb. 809, __ N.W.2d __ (January 6, 2006) (court addressed whether promissory estoppel applied in an at-will employment case). *Blinn* requires a promise plus reasonable

10

and foreseeable reliance by the plaintiff. *Id.* at *11. In regard to the application of promissory estoppel in the context of the applicability of the statute of frauds, the Nebraska Supreme Court has declared:

> The position we take is that promissory estoppel usually applies only in cases where there is a promise or representation as to an intended abandonment by the promisor of a legal right which he holds or will hold against the promisee. This was the situation present in the *Hecht* case. This also is the interpretation which gives full effect to the statute of frauds rather than rendering it nugatory as the interpretation urged by Coop would *545 do.

*Farmland Service Coop, Inc. v. Klein*, 244 N.W.2d 86, 90 (Neb. 1976) (applying statute of frauds to a case under the Uniform Commercial Code § 2-201). *See also, Blinn*, 205 WL 42391 at *12 (*citing Farmland* for the proposition that "where otherwise binding contract is barred by statute of frauds, promissory estoppel will not lie to circumvent statute of frauds"). "The mere pleading of reliance on the contract to his detriment should not be sufficient to permit a party to assert rights and defenses based on a contract barred by the statute of frauds. If he were permitted to do so, the statute of frauds would be rendered meaningless and nugatory." *Farmland Service Coop, Inc. v. Klein,* 244 N.W.2d 86, 90 (Neb. 1976).

This is a circuitous argument at best. However, even if the statements were made, plaintiffs proceeded at their own risk. These are two commercial developers who understand that contracts of this magnitude must be in writing and signed by the parties. Further, whether it a "formality" or not, everyone knew that the lease had to be approved by the Board of Directors. Plaintiffs then entered into a contract in excess of half a million dollars for the removal of the gas pipe. Plaintiffs initially negotiated for the damages—over 2.5 million dollars of land purchase and one-half million dollars in utility relocation— in

September of 2002, several months before signing the letter of intent, although a final signing occurred in January 2003. It is clear that plaintiffs contemplated these expenditures well before the letter of intent had been signed by the parties.

The court finds that the motion for summary judgment should likewise be granted on the promissory estoppel cause of action. A crucial element, a promise, is absent. A passing comment in January that this is a "done deal" in the context that it was made is insufficient. It is not a promise upon which plaintiffs could reasonably rely. The parties continued negotiations until well into March 2003, as is evidenced by the emails, letters, and continuing drafts of the lease agreement. The parties still talked about board approval as late as March 2003. Such approval had not happened. Promissory estoppel cannot be used to circumvent the statute of frauds under the facts of this case. The plaintiffs chose to proceed without a signed lease agreement and without justifiable reliance on the defendant. Consequently, they proceeded at their own risk. Accordingly, summary judgment will be granted with respect to plaintiffs' promissory estoppel claim.

THEREFORE, IT IS ORDERED that the defendant's motion for summary judgment, Filing No. 341, is granted. A separate judgment shall be entered in conjunction with this memorandum and order.

DATED this 13th day of March, 2006.

BY THE COURT:


s/ Joseph F. Bataillon
JOSEPH F. BATAILLON
United States District Judge